# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BMO HARRIS BANK N.A., a national banking association,<br><br>Plaintiff,<br><br>v.<br><br>CHD TRANSPORT INC., a California corporation, GAGAN PREET SINGH, aka GAGAN SINGH, aka GAGANPREET SINGH, an individual resident and citizen of California, and GURINDER SINGH aka GURINDER SINGH DEOZ, an individual resident and citizen of California,<br><br>Defendants. | Case No. 1:17-cv-00625-DAD-BAM<br><br>FINDINGS AND RECOMMENDATIONS REGARDING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT<br><br>(Doc. No. 25) |

On January 31, 2018, Plaintiff BMO Harris Bank N.A. ("Plaintiff") filed a motion for default judgment against Defendants CHD Transport Inc., Gagan Preet Singh, aka Gagan Singh, aka Gaganpreet Singh (hereinafter "Gagan"), and Gurinder Singh, aka Gurinder Singh Deoz (hereinafter "Gurinder") (collectively "Defendants"). (Doc. No. 25.) No opposition was filed, even though the motion was served on the Defendants at the addresses where the Defendants were served. (See Doc. No. 25, p.7.)

The motion was referred to this Court pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302. The Court deemed the matter suitable for decision without oral argument pursuant to

1

Local Rule 230(g), and vacated the hearing scheduled for March 16, 2018.

Having considered the moving papers and the Court's file, the Court RECOMMENDS that Plaintiff's motion for default judgment be GRANTED.[1]

## I. BACKGROUND

According to the complaint, on September 3, 2015, non-party General Electric Capital Corporation ("GECC") and Gagan signing as Gagan Singh entered into Loan and Security Agreement No. 7970100-001 ("First Agreement"), whereby GECC agreed to finance Gagan's purchase of the equipment described therein for use in Gagan's business ("First Loan Collateral"), and Gagan agreed to pay GECC $159,565.80, including interest. (Doc. No.1, Compl. ¶ 15 and Ex. A.)

On September 29, 2015, GECC and Gagan signing as Gagan Preet Singh entered into Loan and Security Agreement No. 7972246-001 ("Second Agreement"), whereby GECC agreed to finance Gagan's purchase of the equipment described therein for use in Gagan's business ("Second Loan Collateral"), and Gagan agreed to pay GECC $277,918.20, including interest. (*Id.* at ¶ 16 and Ex. B.)

Also on September 29, 2015, GECC and Gagan signing as Gagan Preet Singh d/b/a CHD Transport entered into Loan and Security Agreement No. 7972463-001 ("Third Agreement"), whereby GECC agreed to finance Gagan's purchase of the equipment described therein for use in Gagan's business ("Third Loan Collateral"), and Gagan agreed to pay GECC $174,958.80, including interest. (*Id.* at ¶ 17 and Ex. C.)

On October 14, 2015, non-party Transportation Truck and Trailer Solutions, LLC ("TTTS") and Gagan signing as Gagan Preet Singh entered into Loan and Security Agreement No. 7973922-001 ( "Fourth Agreement"), whereby TTTS agreed to finance Gagan's purchase of the equipment described therein for use in Gagan's business ("Fourth Loan Collateral"), and Gagan agreed to pay TTTS $179,850.00, including interest. (*Id.* at ¶ 18 and Ex. D.)

---

1. The Court has not been notified that any party has filed bankruptcy. No notice of filing of bankruptcy has been filed with this Court. See Local Rule 159 ("If the filing party has not filed the required Notice and another party learns of the bankruptcy filing, that party must file the Notice within seven (7) days of learning of the bankruptcy filing.")

On October 26, 2015, TTTS and Gurinder signing as Gurinder Singh Deoz entered into Loan and Security Agreement No. 7974830-001 ("Fifth Agreement"), whereby TTTS agreed to finance Gurinder's purchase of the equipment described therein for use in Gurinder's business ("Fifth Loan Collateral"), and Gurinder agreed to pay TTTS $180,916.80, including interest. (*Id.* at ¶ 19 and Ex. E.)

On November 6, 2015, TTTS and Gagan signing as Gaganpreet Singh entered into Loan and Security Agreement No. 7976133-001 ("Sixth Agreement"), whereby TTTS agreed to finance Gagan's purchase of the equipment described therein for use in Gagan's business ("Sixth Loan Collateral"), and Gagan agreed to pay TTTS $91,866.60, including interest. (*Id.* at ¶ 20 and Ex. F.)

In consideration for entering into the above agreements ("Agreements"), Gagan and Gurinder granted GECC and TTTS, respectively, a first-priority security interest in the respective collateral ("Collateral"). The Collateral consists of the following vehicles and equipment:

| | |
|---|---|
| **First Agreement**: | 2016 Kenworth Tractor, VIN 1XKAD49X8GJ115227 |
| **Second Agreement**: | 2016 Utility Trailer, VIN 1UYVS2534GU675627 |
| | 2016 Utility Trailer, VIN 1UYVS2536GU675628 |
| | 2016 Utility Trailer, VIN 1UYVS2538GU675629 |
| **Third Agreement**: | 2016 Peterbilt Tractor, VIN 1XPBD49X5GD342100 |
| **Fourth Agreement**: | 2016 Volvo Tractor, VIN 4V4NC9EJ5GN957986 |
| **Fifth Agreement**: | 2016 Volvo Tractor, VIN 4V4NC9EJ4GN948695 |
| **Sixth Agreement**: | 2016 Utility Trailer, VIN 1GRAA0626GW703089 |

(*Id.* at ¶ 22.)

GECC and TTTS perfected their respective security interests in the Collateral by recording their respective liens on the Certificates of Title for each of the vehicles. Plaintiff holds the original Certificates of Title. (*Id.* at ¶ 23 and Ex. G.)

Effective October 1, 2015, GECC transferred and assigned to TTTS all of its rights, titles and interests in the First, Second and Third Agreements including, without limitation, its security interests in the respective units of the Collateral. Effective December 1, 2015, TTTS transferred

and assigned to Plaintiff all of its rights, titles and interests in and to its accounts with Defendants, including the Agreements and security interests in the Collateral. Plaintiff is GECC's and TTTS's successor-in-interest with respect to all rights, claims, and interests related to Defendants with respect to this action. (*Id.* at ¶ 24 and Ex. H.)

On May 5, 2016, CHD assumed all of Gurinder's rights and obligations under the Fifth Agreement. (*Id.* at ¶ 25 and Ex. I.) Also on May 5, 2016, as part of the transfer and assumption of the Fifth Agreement, Gagan signing as Gagan Singh guaranteed the full and timely performance of all CHD's present and future liabilities to Plaintiff ("Guaranty"). (*Id.* at ¶ 26 and Ex. J.)

Defendants are alleged to be in default under the Agreements and Guaranty for their failure to pay amounts due. (*Id.* at ¶ 27.) As of March 13, 2017, the amount due and owing under the Agreements, not including attorneys' fees and expenses or costs of collection, was an amount not less than $769,221.13. (*Id*. at ¶ 36.) Under the guaranty, Gagan is obligated to pay Plaintiff all amounts due to Plaintiff by CHD under the Fifth Agreement, without limitation. (*Id.* at ¶ 37.)

By letters dated March 17, 2017, Plaintiff notified Defendants of their defaults under the Agreements and the Guaranty, and of Plaintiff's election to accelerate the loans, and made demand for payment of the amounts due and surrender of the Collateral. (*Id.* at ¶ 38 and Ex. K.) Despite the demand, Defendants failed to pay the amount due and owing under the Agreements and the Guaranty. (*Id.* at ¶ 39.)

Prior to the filing of this lawsuit, Plaintiff recovered certain Collateral. However, as of the filing, the following Collateral remains in Defendants' possession or control ("Remaining Collateral"):

2016 Utility Trailer, VIN 1UYVS2536GU675628

2016 Utility Trailer, VIN 1GRAA0626GW703089

(*Id.* at ¶ 41.)

Plaintiff filed this lawsuit on May 2, 2017, asserting causes of action for injunctive relief, specific performance, claim and delivery, along with breach of contract against Gagan, CHD, and Gurinder. Plaintiff served Defendants CHD and Gagan by substituted service on May 21, 2017.

(Doc. Nos. 7, 8, and 9.) Plaintiff personally served Gurinder on September 18, 2017. (Doc. No. 18.) Defendants did not respond to the complaint, and on December 15, 2017, Plaintiff filed a request for entry of default. (Doc. No. 23.). On the same day, the Clerk of the Court entered default against Defendants CHD, Gagan and Gurinder. (Doc. No. 24.). Thereafter, on January 31, 2018, Plaintiff filed the instant motion for default judgment. (Doc. No. 25.) Plaintiff requests default judgment in an amount of $652,186.65 against Gagan, plus post-judgment interest which may accrue as well as all reasonable attorney's fees and costs incurred by Plaintiff in prosecuting this action. Plaintiff also requests default judgment in an amount of $147,596.16 against CHD and Gurinder, jointly and severally, plus post-judgment interest which may accrue, as well as all reasonable attorney's fees and costs incurred by Plaintiff in prosecuting this action. Additionally, Plaintiff seeks an award against all defendants for $4,703.50 in attorneys' fees and expenses incurred in enforcing the Agreements and for attorneys' fees continuing to accrue. Plaintiff also seeks immediate possession of the remaining Collateral.

## II.   LEGAL STANDARD FOR DEFAULT JUDGMENT

Pursuant to Federal Rule of Civil Procedure 55(b)(2), a plaintiff can apply to the court for a default judgment against a defendant that has failed to plead or otherwise defend against the action. Fed. R. Civ. P. 55(b)(2). "Upon default, the well-pleaded allegations of a complaint relating to liability are taken as true." Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc., 722 F.2d 1319, 1323 (7th Cir. 1983); TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987).

Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986); PepsiCo, Inc. v. Cal. Sec. Cans, 238 F.Supp.2d 1172, 1174 (C.D. Cal. 2002)

## III.   DISCUSSION

### A. Service of Process

Plaintiff is suing two individuals in this action, Gagan Singh and Gurinder Singh. Federal Rule of Civil Procedure 4 sets forth the requirements for serving an individual within a judicial district of the United States. Pursuant to Rule 4(e)(2), an individual may be served by delivering a copy of the summons and of the complaint to the individual personally or by leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there. Fed. R. Civ. P. 4(e)(2)(A), (B). According to the proofs of service on file, Defendant Gurinder Singh was personally served, and Defendant Gagan Singh was served by leaving a copy of the summons and complaint at Defendant Singh's residence with a competent member of the household over 18. (Doc. Nos. 9, 18.)

Plaintiff also is suing CHD Transport, Inc., a California corporation. Pursuant to Rule 4(h), a domestic corporation may be served by following state law for service of a summons on an individual or by delivering a copy of the summons and complaint to an officer or agent and by a mailing a copy of each to the defendant. Fed. R. Civ. P. 4(h)(1). Under California, an individual may be served by "substitute service" as a person's dwelling house or "usual place of abode," after diligent attempts at personal service, and thereafter mailing a copy to the place where the summons and complaint were left. Cal. Code Civ. P. §415.20(b). Three attempts at personal service at a proper place is diligent. *American Express Centurion Bank v. Zara*, 199 Cal.App.4th 383, 389 (2011) (to qualify as reasonable diligence, two or three attempts must first be made to personally serve the defendant). Here, Plaintiff submitted evidence that Defendant Gagan Singh was Defendant CHD Transport, Inc.'s agent for service process. Plaintiff did not personally serve Gagan Singh as agent, but left the summons and complaint with John Doe, a person at least 18 years of age, at his residence, after three attempts at service. Plaintiff also mailed a copy of the summons and complaint to the address for Defendant Gagan Singh. (Doc. Nos. 7, 8, 9.)

The Court finds that Defendants were properly served with the summons and complaint.

### B. The Eitel Factors Weigh in Favor of Default Judgment

As discussed below, the Court finds that the Eitel factors weigh in favor of granting default judgment.

1. Possibility of Prejudice to Plaintiff

The first factor considers whether a plaintiff would suffer prejudice if default judgment is not entered. See PepsiCo, Inc., 238 F.Supp.2d at 1177. Generally, where default has been entered against a defendant, a plaintiff has no other means by which to recover damages. Id.; Moroccanoil, Inc. v. Allstate Beauty Prods., 847 F.Supp.2d 1197, 1200-01 (C.D. Cal. 2012). Therefore, the Court finds Plaintiff would be prejudiced if default judgment is not granted, and this factor weighs in favor of default judgment.

2. Merits of Plaintiff's Claims and Sufficiency of the Complaint

The second and third Eitel factors, taken together, "require that [the] plaintiff[s] state a claim on which [they] may recover." PepsiCo, Inc., 238 F. Supp. 2d at 1175. Notably a "defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." DIRECTV, Inc. v. Hoa Huynh, 503 F.3d 847, 854 (9th Cir. 2007). Plaintiff's complaint alleges breach of loan agreements and breach of a guarantee. However, neither Plaintiff's application for default judgment nor its complaint provide the relevant legal standard or analysis of these claims. Despite this deficiency, the Court will evaluate the merits and sufficiency of the complaint.

The loan agreements at issue provide that they will be subject to the laws of the state of Texas. Doc. No. 1, Ex. A ¶ 7.6; Ex. B ¶ 7.6; Ex. C ¶ 7.6; Ex. D ¶ 7.6, Ex. E ¶ 7.6; and Ex. F ¶ 7.6. In determining the enforceability of a choice-of-law provision in a diversity action, such as this one, a federal court applies the choice of law rules of the forum state, in this case California. Hatfield v. Halifax PLC, 564 F.3d 1177, 1182 (9th Cir. 2009). In California, "a freely and voluntarily agreed-upon choice of law provision in a contract is enforceable 'if the chosen state has a substantial relationship to the parties or the transaction *or any other reasonable basis exists for the parties' choice of law*.' " 1–800–Got Junk? LLC v. Super. Ct., 189 Cal.App.4th 500, 513–14 (2010) (quoting Trust One Mortg. Corp. v. Invest Am. Mortg. Corp., 134 Cal.App.4th 1302, 1308 (2005) (emphasis in original). There is a strong policy in favor of enforcing choice of law provisions. 1–800–Got Junk? LLC, 189 Cal.App.4th at 513.

Here, the parties have agreed that the laws of Texas apply to claims arising out of to the loan agreements. It is not necessary to decide whether California or Texas's substantive law

governs, however, because the Court is aware of no relevant differences between the states' laws governing breach of contract claims. See <u>Petro-Diamond Inc., v. SCB & Assocs., LLC</u>, No. SACV 12-01893-CJC(ANx), 2013 WL 12138724, at *3 n. 4 (C.D. Cal. Sept. 18, 2013) ("The Court need not decide whether California's or Texas's substantive law governs, however, because it is aware of no relevant differences between the states' laws governing breach of contract and civil conspiracy."); see also <u>Paramount Pictures Corp. v. Johnson Broad. Inc.</u>, No. CIV.A.H 04 03488, 2006 WL 367874, at *5 n. 6 (S.D. Tex. Feb. 15, 2006) ("The Court need not decide whether California's or Texas's substantive law applies, however, since the law governing breach of contract claims is the same for both states.").

In order to establish a breach of contract claim, a plaintiff must demonstrate: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant, and (4) resulting damages to the plaintiff. <u>Id.</u> at *5 (citing <u>Reichert v. Gen. Ins. Co. of Am.</u>, 68 Cal.2d 822, 69 Cal.Rptr. 321, 442 P.2d 377, 381 (Cal. 1968) and <u>Aguiar v. Segal</u>, 167 S.W.3d 443, 450 (Tex. App. 2005)).

With respect to the breach of guaranty claims, under California law, the elements for a breach of guaranty claim generally are the same as the elements of a breach of contract claim. See <u>Alwood v. Montecalvo</u>, No. CV 14-08139 MMM (PJWx), 2015 WL 13306204, at *6 (C.D. Cal. Nov. 3, 2015). Under Texas law, to prevail on a claim for breach of a guaranty, Plaintiff must establish (1) the existence and ownership of a guaranty contract; (2) the terms of the underlying contract secured by the guaranty; (3) the occurrence of the conditions upon which liability is based; and (4) the failure or refusal to perform the promise by the guarantor. <u>CSFB1998-C2 TX Facilities, LLC v. Rector</u>, No. 3:14-CV-4142-M, 2016 WL 631923, at *2 (N.D. Tex. Feb. 16, 2016).

The Court finds that Plaintiff's complaint sufficiently states claims for breach of the loan agreements and guaranty, which weighs in favor of default judgment.

3. <u>The Sum of Money at Stake in the Action</u>

Under the fourth factor cited in <u>Eitel</u>, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." <u>PepsiCo, Inc.</u>, 238 F Supp.2d at

1176; see also Philip Morris USA, Inc. v. Castworld Prods., Inc., 219 F.R.D. 494, 500 (C.D. Cal. 2003). Here, Plaintiff seeks judgment in the amount of $652,186.65 against Defendant Gagan Preet Singh, plus post-judgment interest which may accrue, along with reasonable attorney's fees and costs incurred by Plaintiff in prosecuting this action. Plaintiff also seeks default judgment in an amount of $147,596.16 against CHD and Defendant Gurinder Singh, jointly and severally, along with post-judgment interest and attorney's fees and costs incurred by Plaintiff in prosecuting this action. (Doc. No. 25.) The Court finds that although the amount at stake is significant, it is proportional to the harm caused by Defendants' failure to repay the loan amounts and, therefore, this factor does not weigh against entry of default judgment.

    4. <u>The Possibility of a Dispute Concerning Material Facts</u>

The facts of this case are straightforward, and Plaintiff has provided the Court with well-pled allegations and a declaration with exhibits in support. Here, the Court may assume the truth of well-pled facts in the complaint following the clerk's entry of default and, thus, there is no likelihood that any genuine issue of material fact exists. Defendants' failure to file an answer in this case or a response to the instant motion further supports the conclusion that the possibility of a dispute as to material facts is minimal. See, e.g., Elektra Entm't Grp. Inc. v. Crawford, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists."). This factor therefore weighs in favor of default judgment.

    5. <u>Whether the Default Was Due to Excusable Neglect</u>

The sixth Eitel factor considers the possibility that Defendants' default resulted from excusable neglect. PepsiCo, Inc., 238 F.Supp.2d at 1177. Courts have found that where defendants were "properly served with the complaint, the notice of entry of default, as well as the paper in support of the [default judgment] motion," there is no evidence of excusable neglect. Shanghai Automation Instrument Co. v. Kuei, 194 F.Supp.2d 995, 1005 (N.D. Cal. 2001). Upon review of the record, the Court finds that the default was not the result of excusable neglect. See PepsiCo, Inc., 238 F. Supp. 2d at 1177. According to the Court's docket, Plaintiff properly served Defendants Gagan Preet Singh, Gurinder Singh and CHD. Doc. Nos. 7, 8, 9, 18. Moreover,

Plaintiff served Defendants with a copy of the request for entry of default and the motion for default judgment. Doc. Nos. 23 at 5 and 24 at 7. Despite ample notice of this lawsuit and Plaintiff's intention to seek a default judgment, Defendants have not appeared to date. Thus, the record suggests that they have chosen not to defend this action, and not that the default resulted from any excusable neglect. Accordingly, this factor weighs in favor of the entry of a default judgment.

### 6. The Strong Policy Favoring Decisions on the Merits

"Cases should be decided upon their merits whenever reasonably possible." Eitel, 782 F.2d at 1472. However, district courts have concluded with regularity that this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself in an action. PepsiCo, Inc., 238 F.Supp.2d at 1177; see also Craigslist, Inc. v. Naturemarket, Inc., 694 F.Supp.2d 1039, 1061 (N.D. Cal. Mar. 5, 2010). Although the Court is cognizant of the policy favoring decisions on the merits, that policy is unavailable here because Defendants have not responded. Accordingly, the Court finds that this factor does not weigh against entry of default judgment.

Upon consideration of the Eitel factors, the Court concludes that Plaintiff is entitled to the entry of default judgment against Defendants. The Court therefore will recommend that Plaintiff's Motion for Default Judgment be granted.

**IV.  Requested Relief**

    **A.  Damages**

The loan agreements at issue all provide that in the event of default, all indebtedness becomes immediately due and payable of the borrower become immediately due and payable, and Plaintiff is entitled to take possession of and dispose of the equipment and to have the borrower pay all interest and expenses incurred, including reasonable attorneys' fees. Doc. 1-1, Ex. A at ¶¶ 5.1-5.3; Ex. B at ¶¶ 5.1-5.3; Ex. C at ¶¶ 5.1-5.3; Ex. D at ¶¶ 5.1-5.3; Ex. E at ¶¶ 5.1-5.3; and Ex. F at ¶¶ 5.1-5.3  Pursuant to the guaranty, Defendant Gagan Singh agreed to pay on demand all indebtedness owed by CHD, including all losses, costs and attorneys' fees. Doc. 1-1, Ex. J.

As of the respective dates of default on the various agreements, Plaintiff declares that the principal amount due and owing after acceleration is as follows:

> First Agreement: $105,689.10;
> Second Agreement: $192,968.72;
> Third Agreement: $116,288.11;
> Fourth Agreement: $119,352.53;
> Fifth Agreement: $118,753.28; and
> Sixth Agreement: $60,597.77.

Doc. 25-1, Affidavit in Support of Motion for Default Judgment at ¶ 19. However, prior to filing suit, Plaintiff recovered certain collateral and applied the proceeds to the balances due under the agreements as follows:

> First Agreement: $95,000.00;
> Second Agreement: $19,383.81;
> Third Agreement: $64,985.53;
> Fourth Agreement: $54,409.23;
> Fifth Agreement: $0.00; and
> Sixth Agreement: $11,289.07.

*Id.* at ¶ 21. As of the date of this suit, the following collateral remained in Defendants' possession or control: (1) 2016 Utility Refrigerated Van Trailer 1UYVS2536GU675628; and (2) 2016 Utility Refrigerated Van Trailer 1GRAA0626GW703089. *Id.* at ¶ 20.

Further, under the agreements, Defendants are obligated to pay interest on all unpaid amounts at the default interest rate of eighteen percent per annum or the maximum rate not prohibited by law. *Id.* at ¶ 22. Calculated from the dates of default, the total amount of accrued and unpaid interest due and owing is $156,374.16. *Id.* at ¶ 23. Defendants also are obligated to pay late charges totaling $14,201.12. *Id.* at ¶ 24.

As of January 24, 2018, the amount due and owing under First, Second, Third, Fourth and Sixth agreements, not including attorneys' fees and costs, totals not less than $652,186.65. *Id.* at ¶ 27. As of that same date, the amount due and owing under the Fifth Agreement, not including attorneys' fees and costs, is an amount not less than $147,596.16. *Id.* at ¶ 28. Under the Guaranty, Defendant Gagan Singh is obligated to pay all amounts due by CHD and Defendant Gurinder Singh under the Fifth Agreement. *Id.* at ¶ 29.

These requested amounts are supported by an affidavit. Doc. 25-1. The agreements,

11

guaranty and affidavit constitute sufficient proof that Plaintiff has sustained damages for the breaches of the agreements and guaranty. Based on breach of the loan agreements and guaranty, Plaintiff seeks judgment in the amount of $652,186.65, plus post-judgment interest and attorneys' fees and costs, against Defendant Gagan Singh, and judgment in the amount of $147,596.16, plus post-judgment interest and attorneys' fees and costs, against CHD and Defendant Gurinder Singh, jointly and severally. Doc. 25 at ¶¶ 21, 22.

### B. Attorneys' Fees

Plaintiff seeks a total amount of $4,703.50 in attorneys' fees and costs. Doc. 25-1 at 16. "California and Texas both enforce contractual provisions allowing the collection of reasonable attorneys' fees. Cal. Civ. Proc. Code § 1021; Gil v. Mansano, 121 Cal.App.4th 739, 742-43 (2004); Tex. Civ. Prac. & Rem. Code Ann. § 38.001 (allowing prevailing party in a breach of contract action to collect attorneys' fees as a default rule); Intercontinental Grp. P'ship v. KB Home Lone Star L.P., 295 S.W.3d 650, 653 (Tex. 2009) (finding that parties may specifically contract for a broader or narrower attorney's fees provision than the default rule laid out by statute). The Court therefore finds that Plaintiff is entitled to reasonable attorneys' fees.

To determine a reasonable attorneys' fee, or "lodestar," the starting point is the number of hours reasonably expended multiplied by a reasonable hourly rate. See Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). The Court, in considering what constitutes a reasonable hourly rate, looks to the prevailing market rate in the relevant community. Blum v. Stenson, 465 U.S. 886, 895 (1984). The "relevant community" for the purposes of the lodestar calculation is generally the forum in which the district court sits. Gonzalez v. City of Maywood, 729 F.3d 1196, 1205 (9th Cir. 2013). The relevant community here is the Fresno Division of the Eastern District of California.

In the Fresno Division of the Eastern District of California, attorneys with twenty or more years of experience are awarded $350.00 to $400.00 per hour. See, e.g. Leprino Foods Co. v. JND Thomas Co., Inc., No. 1:16-cv-01181-LJO-SAB, 2017 WL 128502, at *13 (E.D. Cal. Jan. 12, 2017), report and recommendation adopted in part, No. 1:16-cv-01181-LJO-SAB, 2017 WL 432480 (E.D. Cal. Feb. 1, 2017) (finding $400.00 per hour a reasonable hourly rate for attorney

with more than thirty years of experience); Sanchez v. Frito-Lay, Inc., No. 1:14-CV-00797 AWI-MJS, 2015 WL 4662636, at *18 (E.D. Cal. Aug. 5, 2015), report and recommendation adopted, No. 1:14-CV-797-AWI-MJS, 2015 WL 5138101 (E.D. Cal. Aug. 26, 2015) (finding reasonable rate for attorney with twenty years of experience was $350 per hour in a wage and hour class action); Willis v. City of Fresno, No. 1:09-CV-01766-BAM, 2014 WL 3563310, at *12 (E.D. Cal. July 17, 2014) adhered to on reconsideration, No. 1:09-CV-01766-BAM, 2014 WL 4211087 (E.D. Cal. Aug. 26, 2014) (awarding attorneys with over twenty five years of experience $380.00 per hour). Generally, "$300 is the upper range for competent attorneys with approximately a decade of experience." Barkett v. Sentosa Props. LLC, No. 1:14–CV–01698–LJO, 2015 WL 5797828, at *5 (E.D. Cal. Sept. 30, 2015) (O'Neill, J.) (citing Silvester v. Harris, No. 1:11–CV–2137 AWI SAB, 2014 WL 7239371, at *4 (E.D. Cal. Dec. 17 2014). For attorneys with "less than ten years of experience ... the accepted range is between $175 and $300 per hour." Silvester, 2014 WL 7239371 at *4 (citing Willis v. City of Fresno, 1:09-cv-01766-BAM, 2014 WL 3563310 (E.D. Cal. July 17, 2014); Gordillo v. Ford Motor Co., No. 1:11-cv-01786 MJS, 2014 WL 2801243 (E.D. Cal. June 19, 2014)). Finally, "[t]he current reasonable hourly rate for paralegal work in the Fresno Division ranges from $75 to $150, depending on experience." Silvester, 2014 WL 7239371, at *4 (citations omitted); cf. Franco v. Ruiz Food Prods., Inc., No. 1:10–cv–02354–SKO, 2012 WL 5941801, at *20 (E.D. Cal. Nov. 27, 2012) (approving a rate of "$100 per hour" for "legal assistants).

Here, Plaintiff provides no information regarding rates per hour or hours expended. Despite the deficiency in Plaintiff's moving papers, the Court takes judicial notice of the State Bar of California website, which shows that Mr. Miles, the attorney of record in this action, was admitted to practice in California in 2010, and has approximately 8 years of experience in this state. Given this information, the Court finds a rate of $300 per hour to be reasonable for the services of Mr. Miles. With this hourly rate in mind, the amount of $4,703.50 requested by Plaintiff equates with approximately 16 hours of work incurred prosecuting this action. The Court finds this amount reasonable, and will recommend that attorney fees be awarded in the amount of $4,703.50.

13

## V. CONCLUSION AND RECOMMENDATION

Based on the foregoing, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion for default judgment (Doc. 25), filed on January 31, 2018, be granted;

2. Default judgment be entered in favor of Plaintiff and against Defendant Gagan Preet Singh in the amount of $ 652,186.65, plus post-judgment interest which may accrue, less any net proceeds received from the liquidation of any remaining collateral recovered;

3. Default judgment be entered in favor of Plaintiff and against Defendant Gurinder Singh and CHD Transport, Inc., jointly and severally, in the amount of $147,596.16, plus post-judgment interest which may accrue, less any net proceeds received from liquidation of any remaining collateral recovered;

4. Defendants, jointly and severally, shall pay to Plaintiff an amount of $4,703.50, which represents the reasonable attorneys' fees and costs incurred;

5. Plaintiff be awarded final possession of the remaining collateral identified as a 2016 Utility Refrigerated Van Trailer 1UYVS2536GU675628, and a 2016 Utility Refrigerated Van Trailer 1GRAA0626GW703089; and

6. Upon recovery of the remaining collateral identified above, Plaintiff be authorized to liquidate such collateral in accordance with the agreements and applicable law.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **September 5, 2018**      /s/ *Barbara A. McAuliffe*
                                  UNITED STATES MAGISTRATE JUDGE